**J. W. LANCASTER, Appellant,**

v.

**George L. McLENDON, Jr., et ux., Appellees.**

**No. 16397.**

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 18, 1963.

Crocker & McDonald, and Toy Crocker, Cantey, Hanger, Johnson, Scarborough & Gooch, and R. Daniel Settle, Fort Worth, for appellant.

Donald C. Bubar and Melvin F. Adler, Fort Worth, for appellees.

RENFRO, Justice:

J. W. Lancaster sued George L. McLendon, Jr., and wife for damages for breach of contract to exchange property. Defendants filed a cross-action.

After verdict was returned, which found that plaintiff did not have a fixed intention to repudiate the contract, failed to answer the issue as to whether defendants had a fixed intention to repudiate the contract, and made findings as to the value of the respective properties, plaintiff filed motion for judgment on the verdict and for judgment notwithstanding the verdict. Defendants filed a motion for judgment notwithstanding the verdict. Their motion was sustained and judgment entered denying relief to either party.

Prior to February 5, 1957, plaintiff had entered into a written agreement with Fred "Red" Harris which gave plaintiff an option to purchase from Harris the Cebolla River Ranch in New Mexico. The last day for the exercise of the option by plaintiff was February 11, 1957. The contract provided for either an abstract or a title policy.

On February 5, 1957, the McLendons by written instrument (which recited "having in hand a copy of the Exchange Contract between Fred Red Harris of New Mexico, and J. W. Lancaster of Fort Worth, dated January 4th, 1957, * * *") described the New Mexico ranch, and agreed to convey to Harris or Lancaster, as directed by Rattikin Title Company, a certain described tract of land owned by defendants in Tarrant County in exchange for the Cebolla Ranch. In addition, the defendants agreed to pay $13,-000 cash.

Defendants agreed to abide by the standard print provisions as to prorations, titles, forfeits, rights, etc., set out in the existing contract between Harris and Lancaster.

All instruments pertaining to the respective properties were to be executed at once in the office of Rattikin Title Company and held by said Company until defendants paid the $13,000 on or before March 11, 1957.

On February 7, Harris conveyed the Cebolla Ranch to Lancaster. On February 11, Lancaster executed a deed conveying the Cebolla Ranch to defendants. The defendants executed a deed to plaintiff conveying the Fort Worth property. The conveyances were left with Rattikin Title Company to be delivered on March 11, when defendants were to pay the $13,000 cash.

On March 11, the McLendons and their attorneys, and Lancaster and his attorney met in the office of Alvin Botts, attorney for Rattikin, to close the transaction. Defendants' attorneys refused to accept the standard form title policy, whereon Botts arranged for the issuance of a New Mexico form of title policy which defendants desired. Defendants' attorneys then made various requirements pertaining to the title to the Cebolla Ranch.

As a result of the discussions defendants refused to pay the $13,000 cash consideration, and the trade was not consummated.

In the motion for judgment non obstante, the grounds set out by defendants for judgment were: "* * * the undisputed evi-

-dence by Alvin Botts was that had he known on that date that on February 11, 1957, the date on which Plaintiff signed and acknowledged the deed before him, the plaintiff was not in fact a single man, as stated in the deed and acknowledgment, but was married and was being sued for divorce, said Rattikin Title Company would not have issued the title policy on the New Mexico land, and * * * the jury's findings on reasonable market value show that Defendants, and not Plaintiff, were the losers of the bargain, * * *."

The record shows that on December 13, 1956, plaintiff and his then wife, in contemplation of divorce, entered into a written property settlement in which the wife agreed to accept certain designated property and relinquish all interest to plaintiff in all other community property.

A divorce was granted to the then Mrs. Lancaster from plaintiff on February 21, 1957, in the district court of Van Zandt County, in which the property settlement was approved.

As a witness at the trial, Botts was asked by defendants' counsel: "Now, had you known on February 11 that J. W. Lancaster was a married man at the time he contracted to buy this property on January the fourth, and at the time he was acquiring it from Fred 'Red' Harris on February the eleventh, and at the time he was claiming to be tendering performance on March the fourth (counsel stipulated the date should be March 11), had you known at that time not only that he was a married man, but that a divorce suit was then pending between him and his wife, would you, under those circumstances, have been willing to have issued any kind of an owner's policy whatever to George McLendon on this transaction, without first getting some deed signed by his wife? A. No."

Mr. Botts testified that he would not have taken plaintiff's acknowledgment as a single man on February 11 had he known plaintiff was then a married man, but he testi-

fied further he satisfied himself that plaintiff was a single man on March 11 and he, for Rattikin, was prepared to issue a title policy. In fact there is no dispute as to Botts' readiness to issue the exact type of title policy defendants desired on March 11.

It is obvious his "No" answer to the question by defendants' counsel was based on the assumption, contained in the question, that plaintiff was a married man on March 11, an assumption which is contrary to the undisputed evidence.

Since Botts knew on March 11 that plaintiff was a single man and was willing to issue the type of title policy desired by defendants, the motion for judgment notwithstanding the verdict on the ground Botts would not have issued a title policy had he known plaintiff was a married man on March 11 was not a proper ground for judgment.

We think, however, the judgment must be sustained on that part of the motion to the effect that the jury's findings on reasonable market value show that plaintiff lost nothing by this transaction.

The jury found the value of the Cebolla Ranch to be $80,000, and the value of the McLendon place to be $67,000 as of March 11, 1957. Taking into consideration the cash payment which plaintiff would have received and the mortgages against the respective properties, the plaintiff would have conveyed property of the value of $68,500 for exchange of property and money in the amount of $66,000; hence, he would have lost in money value the amount of $2,500 if the trade had been consummated.

This was not a suit for specific performance.

Plaintiff's measure of damages was the difference between what he had and what he would have received from defendants. Under the jury's findings and the undisputed evidence as to the amount of the mortgages, plaintiff suffered no loss by reason of defendants' failure to consummate the trade

Plaintiff alleged he was damaged because, he, relying upon defendants' representations they would go through with the deal with him, incurred certain obligations in order to acquire the Cebolla Ranch, and that due to the failure of defendants to consummate the trade with him, he was forced to sell the ranch at a loss.

Issues were requested and refused inquiring of the jury as to damages thereby sustained by plaintiff. We have studied the 800 pages of oral testimony and the volume of exhibits and have concluded, in the light of the whole record, that reversible error is not shown by reason of the refusal of the Court to submit said issues.

At the March 11th meeting defendants made certain title requirements. Both sides have presented able briefs setting out the respective rights of buyer and seller where a title policy is to be issued.

Under our disposition of the appeal, we think it neither necessary nor proper to pass on such questions.

The judgment is affirmed.